UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE & MEMORIAL HOSPITAL, *Plaintiff*, *v.* SYLVIA M. BURWELL, MARILYN TAVENNER, and ROBERT G. EATON, *Defendants*. | Civil No. 3:13cv1495 (JBA) December 22, 2014 |

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This is an action by Plaintiff Lawrence & Memorial Hospital for declaratory and injunctive relief against Defendants Sylvia Burwell, Secretary of the Department of Health and Human Services ("HHS"), Marilyn Tavenner, Administrator of the Centers for Medicare and Medicaid Services ("CMS"), and Robert G. Eaton, Chairman of the Medicare Geographic Classification Review Board ("MGCRB"), seeking a declaration that the regulatory scheme governing the MGCRB violates the Medicare Act and the Administrative Procedures Act, and a permanent injunction enjoining Defendants from applying that scheme to Plaintiff's current and future reclassification applications. (Compl. [Doc. # 1].)  On the same day it filed its Complaint, Plaintiff also filed a motion [Doc # 4] for a preliminary injunction, enjoining Defendants from acting on Plaintiff's then-pending application for reclassification until the Court could hold a hearing on the merits of the action.  The Court denied [Doc. # 25] Plaintiff's motion, finding that Plaintiff had failed to demonstrate by clear and substantial evidence that it was likely to succeed on the merits.  Plaintiff [Doc. # 36] and Defendants [Doc. # 35] now each move for summary judgment.  For the following reasons, Defendants' motion is granted and Plaintiff's motion is denied.

I.      **Background**

    **A. The Wage Index and the Medicare Geographic Classification Review Board**

A detailed account of the relevant factual background is presented in the Court's Ruling [Doc. # 25] on Plaintiff's Motion for Preliminary Injunction. Briefly, Medicare payments to hospitals are made pursuant to the inpatient prospective payment system ("IPPS") for Medicare Part A and pursuant to the outpatient prospective payment system ("OPPS") for Medicare Part B.  (*See* Compl. ¶¶ 18–19.)  Under both systems, CMS sets a standardized payment rate, which is then adjusted to account for the fact that labor costs vary across the country.  (*See id.* ¶¶ 18–22.)  To effectuate this adjustment, CMS uses a "wage index," which represents the relation between the local average of hospital wages and the national average of hospital wages.  (*See id.*); *see also* 42.U.S.C. § 1395ww(d)(3)(E).

In 1983, in order to effectuate the wage index adjustment, the Secretary of HHS established standardized hospital labor markets by grouping hospitals according to their location in Metropolitan Statistical Areas ("MSAs").  (*See id.* ¶ 23.)  After the 2000 census, the MSAs were replaced with Core Based Statistical Areas ("CBSAs") that are roughly equivalent to the previous groupings.  (*See id.* ¶ 24.)  Each hospital is reimbursed according to the wage index of the CBSA in which it is physically located.  (*See id.* ¶ 26.)  Since the late 1980s, Congress has periodically amended the Medicare Act to permit hospitals to be reclassified from urban to rural, or to be reclassified to a CBSA other than the one in which they are physically located in order to adjust those hospitals' wage indices to reflect the fact that the CBSAs do not always accurately reflect labor market wage differences.  (*See id.* ¶¶ 28–36.)

In 1989, Congress established the Medicare Geographic Classification Review Board ("MGCRB") to provide a mechanism by which a hospital could request to be relocated from the geographical area in which it was located to another proximate area for the purposes of determining its wage index and reimbursement rate. (*See id.* ¶ 38); *see also* 42 U.S.C. § 1395ww(d)(10). In order to have its application for reclassification approved by the MGCRB, a hospital must show that (1) its wages are higher than those of other hospitals in the area where it is physically located; (2) its wages are comparable to those of other hospitals in the area to which it seeks to be reclassified; and (3) it is proximate to the area to which it seeks to be reclassified. (*See* Compl. ¶ 39.) If a hospital has been designated as a rural referral center ("RRC"), the first and third elements of this test are waived. (*See* Compl. ¶ 44); *see also* 42 C.F.R. §§ 412.230(a)(3) and 412.230(d)(1)(3)(C). If the MGCRB approves a hospital's application, its reclassification is valid for a period of three years. (*See* Compl. ¶ 45.)

**B. 340B Drug Discount Program**

Pursuant to the 340B Drug Discount Program, pharmaceutical manufacturers must, as a condition of Medicaid covering their products, enter into a Pharmaceutical Pricing Agreement with the Secretary of HHS, under which the manufacturers agree to offer 340B "covered entities" "covered outpatient drugs" at a discounted price. (Pl.'s Mem. Supp. Mot. Summ. J. [Doc. # 36] at 14); 42 U.S.C. §256b. Covered entities include disproportionate share hospitals, children's hospitals, free-standing cancer hospitals, critical access hospitals, RRCs, and sole community hospitals. (Pl.'s Mem. Supp. at 14); 42 U.S.C. § 256b(a)(4)(M)–(O). While disproportionate share hospitals must have a disproportionate share adjustment factor of greater than 11.75% to participate, RRCs may

participate as long as they have a disproportionate share adjustment factor of greater 8%.

(Pl.'s Mem. Supp. at 14.)

### C.  Section 401

In 1999, Congress enacted Section 401, which provides a mechanism by which hospitals in urban areas may be reclassified as rural for reimbursement purposes.  (*See* Compl. ¶ 48.)  Section 401 provides:

> (i)      For purposes of this subsection, not later than 60 days after the receipt of an application . . . from a subsection (d) hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D))[1] of the State in which the hospital is located.
>
> (ii)     For purposes of clause (i), a subsection (d) hospital described in this clause is a subsection (d) hospital that is located in an urban area (as defined in paragraph (2)(D)) and satisfies any of the following criteria:
>
> > (I)     The hospital is located in a rural census tract of a metropolitan statistical area . . . .
> >
> > (II)    The hospital is located in an area designated by any law or regulation of such State as a rural area (or is designated by such State as a rural hospital).
> >
> > (III)   The hospital would qualify as a rural, regional, or national referral center under paragraph (5)(C) or as a sole community hospital under paragraph (5)(D) if the hospital were located in a rural area.
> >
> > (IV)   The hospital meets such other criteria as the Secretary may specify.

42 U.S.C. § 1395ww(D)(8)(E).  A conference report accompanying the legislation enacting Section 401 explains that pursuant to Section 401:

---

[1] Pursuant to 42 U.S.C. § 1395ww(d)(2)(D) "the term 'urban area' means an area within a Metropolitan Statistical Area . . . [and] the term 'rural area' means any area outside such an area or similar area."

> [A] hospital in an urban area may apply to the Secretary to be treated as if
> the hospital were located in a rural area of the State in which the hospital is
> located. Hospitals qualifying under this section shall be eligible to qualify
> for all categories and designations available to rural hospitals, including
> sole community, Medicare dependent, critical access, and referral centers.
> *Additionally, qualifying hospitals shall be eligible to apply to the Medicare
> Geographic [C]lassification Review Board for geographic reclassification to
> another area. The Board shall regard such hospitals as rural and as entitled
> to the exceptions extended to referral centers and sole community hospitals,
> if such hospitals are so designated.*

H.R. Conf. Rep. No. 106-479, 512 (1999) (emphasis added).

In the preamble to the final rule HHS adopted pursuant to Section 401, the Secretary expressed concern that Section 401 "might create an opportunity for some urban hospitals to take advantage of the MGCRB process by first seeking to be reclassified as rural under section 1886(d)(8)(E) (and receiving the benefits afforded to rural hospitals) and in turn seek reclassification through the MGCRB back to the urban area for purposes of their standardized amount and wage index and thus also receive the higher payments that might result from being treated as being located in an urban area."

*Medicare Program*: *Changes to the Hosp. Inpatient Prospective Payment Sys. & Fiscal Year 2001 Rates*, 65 Fed. Reg. 47054, 47087 (Aug. 1, 2000).  In other words, "some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes." *Id.* at 47088.  In the comments, the Secretary also acknowledged the language of the conference report:  "We agree with the commenters that Congress contemplated that hospitals might seek to be reclassified as rural under section 1886(d)[8](E) of the Act in order to become RRCs so that the

hospital would be exempt from the MGCRB proximity requirement and could be reclassified by the MGCRB to another urban area." *Id.* at 47089.

However, in order to address its policy concerns, the Secretary ultimately adopted regulations (which Plaintiffs now challenge) providing that "[a]n urban hospital that has been granted redesignation as rural under § 412.103 cannot receive an additional reclassification by the MGCRB based on this acquired rural status for a year in which such redesignation is in effect." 42 C.F.R. § 412.230(a)(5)(iii).  Further, a hospital must maintain its rural status for at least one full twelve-month cost reporting period after being reclassified pursuant to Section 401 before it can cancel that status and reapply for reclassification by the MGCRB.  *See* 42 C.F.R. § 412.103(g)(2).  Finally, once a hospital that has been redesignated as an RCC pursuant to Section 401 cancels its rural status, that hospital also loses its RRC designation under § 412.96.  (*See* Compl. ¶ 58.)

## D.    Plaintiff's Reclassification Efforts

On July 2, 2013, Plaintiff requested pursuant to Section 401 to be redesignated from urban to rural status, and to be designated as an RRC.  (Pl.'s Mem. Supp. at 15.) Those requests were granted, and Plaintiff was treated as an RRC beginning October 1, 2013.  (*Id.*)  Shortly after being reclassified as rural under Section 401, Plaintiff filed an application with the MGCRB to be reclassified to the (urban) Nassau-Suffolk, NY CBSA. (*Id.*)  On October 11, 2013, while Plaintiff's application was pending, Plaintiff filed this suit and sought a preliminary injunction enjoining Defendants from acting on its application for reclassification until the Court could hold a hearing on the merits of Plaintiff's claims, which the Court denied.   In order to avoid the denial of its reclassification application (pursuant to the Secretary's regulation), Plaintiff cancelled its

6

Section 401 status (effective October 1, 2014).  (*Id.* at 17.)  As a result, its application for reclassification was approved but Plaintiff will no longer be eligible for the 340B Program. (*Id.*)

Plaintiff challenges Defendants' regulatory scheme to the extent that it "provides that Section 401 hospitals are ineligible for subsequent MGCRB reclassification to a different CBSA for wage index purposes."  (*Id.* at 19.)  Plaintiff contends that the regulation is invalid under *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984), as contrary to Congress's intent and as an arbitrary and capricious exercise of the Secretary's power.  Defendants, for their part, claim that because Congress has not spoken directly to the question of whether "a hospital with acquired rural status . . . is entitled to invoke the reclassification procedures . . . in the same manner as a geographically rural hospital," the Secretary's regulation is entitled to deference.  (Defs.' Opp'n to Pl.'s Mot. Summ. J. [Doc. # 37] at 1.)

## II.     Legal Standard[2]

Challenges to an agency's interpretation of a statute that it administers are governed by the two-pronged analysis laid out in *Chevron, U.S.A., Inc. v. Natural Res.*

---

[2] "'[W]hen a party seeks review of agency action under the [Administrative Procedure Act], the district judge sits as an appellate tribunal.  The entire case on review is a question of law.'  Judicial review of agency action is often accomplished by filing cross-motions for summary judgment. The question whether an agency's decision is arbitrary and capricious, however, is a legal issue, whether it is presented as a motion to dismiss or for summary judgment." *State of Connecticut v. U.S. Dep't of Commerce*, No. 3:04CV1271 (SRU), 2007 WL 2349894, at *1 (D. Conn. Aug. 15, 2007) (quoting *American Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083–84 (D.C. Cir. 2001)).  "Generally, a court reviewing an agency decision is confined to the administrative record compiled by that agency when it made the decision." *Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997).

*Def. Council, Inc.*, 467 U.S. 837 (1984).  A court must first determine whether "Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43.  However, "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.  An agency's interpretation will be given controlling weight at step two unless it is arbitrary and capricious.  *Id.* at 844; *see also Natural Resources Defense Council, Inc. v. Muszynski*, 268 F. 3d 91, 98 (2d Cir. 2001) ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." (internal citations and quotation marks omitted)).

## III.    Discussion

There do not appear to be any genuine issues of material fact here.  The parties simply disagree as to the proper interpretation of Section 401.  Because this case can therefore be resolved as a matter of law, summary judgment is appropriate.

### A.    Chevron Step One

At *Chevron* step one, the Court considers whether Congress has clearly spoken in Section 401 as to whether the Secretary is required to treat hospitals with acquired rural status as "rural" for the purposes of an application to the MGCRB for geographic reclassification.  *See Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 116 (2d Cir. 2007).  "To ascertain Congress's intent, we begin with the statutory text. . . . If the statutory language is ambiguous, . . . we will resort first to canons of statutory construction, and, if

the statutory meaning remains ambiguous, to legislative history." *Id.* (internal citations and quotation marks omitted).

Plaintiff asserts that Section 401 is "a model of clarity" that leaves no room for the Secretary's interpretation of it. (Pl.'s Mem. Supp. at 30.) Plaintiff puts great emphasis on Section 401's use of the word "shall" in the phrase: "the Secretary shall treat [an urban] hospital [reclassified under Section 401 as rural] as being located in the rural area . . . of the State in which the hospital is located." (*See id.* at 26 (citing 42 U.S.C. § 1395ww(d)(8)(E)(i)).) According to Plaintiff, by prefacing this command with the words "for purposes of this subsection," Congress made clear its intent that the mandate apply to the whole of subsection (d) of the Medicare Act. (*Id.* at 22–23, 29–30.) Since subsection (d) encompasses the "rules for paying . . . hospitals for inpatient services, including wage index payments [as well as] the MGCRB reclassification process," Plaintiff reasons that the statute unambiguously contemplates that Section 401 hospitals will be treated like any other rural hospital in the MGCRB reclassification process. (*Id.*)

As Defendants emphasized at oral argument, they agree that "shall" is mandatory (Defs.' Opp'n at 2); that "this subsection" refers to subsection (d), (*id.* at 5); and that subsection (d) includes rules regarding the wage index and the MGCRB reclassification process (*see id.* at 3–5). However, Defendants contend that "[t]here is nothing in this bare statutory command that unambiguously requires the Secretary to allow a hospital with acquired rural status to apply for reclassification to an urban area under the MGCRB." (Defs.' Mem. Supp. Mot. for Summ. J. [Doc. # 35-1] at 16.) Defendants argue that Section 401's use of the word "treat" ("the Secretary shall <u>treat</u> a hospital as being located in [a] rural area") is ambiguous and does not clearly "resolve the issue of whether

hospitals with acquired rural status are limited to taking advantage of special payment policies or designations applicable to geographically rural, subsection (d) hospitals, or whether they can also be reimbursed under the wage index of an urban area." (Defs.' Opp'n at 6.)

The Court finds Defendants' analysis persuasive. As previously held in the Ruling on Plaintiff's Motion for a Preliminary Injunction, when the Court was presented with essentially the same arguments and evidence offered by the parties now:

> The text of Section 401 itself . . . does not discuss the intersection of redesignation and geographic reclassification under the Medicare Act. Section 401 also does not address the standards by which the MGCRB should evaluate a hospital's eligibility for geographic classification. Thus, Section 401 is effectively silent as to whether hospitals that have been redesignated as rural must be eligible for geographic reclassification.

(Ruling [Doc. # 25] at 16.)

Plaintiff asks the Court to find that Section 401, which itself makes no mention of the MGCRB reclassification process, unambiguously commands Defendants to permit Section 401 hospitals to apply for reclassification, on the basis of the words: "for purposes of this section," where "this section" encompasses 42 pages (replicated in Plaintiff's brief) of detail regarding how the PPS works. Buried within those 42 pages are the following lines, which Plaintiff conceded at oral argument constitute the only reference to the MGCRB reclassification in the section:

> (10)(A) There is hereby established the Medicare Geographic
>       Classification Review Board . . . .
>    (B) [omitted; describes composition of the Board]
>    (C)(i)  The Board shall consider the application of any subsection (d)
>            hospital requesting that the Secretary change the hospital's
>            geographic classification for purposes of determining for a

fiscal year –

    (I)    the hospital's average standardized amounts under paragraph (2)(D) [which directs the Secretary to compute different averages for urban and rural areas]

    (II)    the factor used to adjust the DRG [diagnosis-related group] prospective payment rate for area differences in hospital wage levels that applies to such hospital under paragraph (3)(E).

    (ii) [omitted; sets deadline for application submissions]

    (iii)[omitted; describes the decision-making and appeals process]

(D)(i) The Secretary shall publish guidelines to be utilized by the Board in rendering decisions on applications submitted under this paragraph. . . . [rest of (D), (E), and (F) omitted; (D) lists types of guidelines the Secretary must create; (E) gives the Board broad power to make rules and establish procedures to carry out the paragraph; and (F) dictates compensation for Board members].

42 U.S.C. § 1395ww(d)(10).  If Congress intended this language, in conjunction with Section 401, to require the Board to accept reclassification applications from Section 401 hospitals, it certainly chose an obscure way to express that intent.  The least that can be said is that Congress has not clearly and unambiguously spoken to the question of whether the Secretary must allow Section 401 hospitals to reclassify as urban.

Nor does the District of D.C.'s decision in *Bayside*, to which Plaintiff points as support for its reading of the statute, compel a different conclusion.  (Pl.'s Opp'n to Defs.' Mot. Summ. J. [Doc. # 38] at 24 (citing *Bayside Cmty. Hosp. v. Sebelius*, No. CV 07-1562 (EGS), 2009 WL 9536725 (D.D.C. Sept. 30, 2009).)  The district court in *Bayside* held that the Secretary's refusal to permit a hospital with acquired rural status to claim a reimbursement reserved for rural hospitals, conflicted with the clear statutory mandate in

Section 401. *See Bayside Cmty. Hosp.*, 2009 WL 9536725, at *11–12.  That is not, however,

the question before this Court.  While Section 401 is clear that the Secretary shall treat

hospitals with acquired rural status as rural hospitals for purposes of the prospective

payment system (PPS), it is not clear that implicit in this directive is a mandate that

Defendants permit an urban hospital to acquire rural status and then immediately turn

around and use that status to leapfrog back into an urban status with a higher wage index.

> To support its proposed construction of Section 401, Plaintiff relies on the text of

the conference report published in conjunction with the adoption of the legislation

enacting Section 401:

> [A] hospital in an urban area may apply to the Secretary to be treated as if
> the hospital were located in a rural area of the State in which the hospital is
> located. Hospitals qualifying under this section shall be eligible to qualify
> for all categories and designations available to rural hospitals, including
> sole community, Medicare dependent, critical access, and referral centers.
> *Additionally, qualifying hospitals shall be eligible to apply to the Medicare
> Geographic Reclassification Review Board for geographic reclassification to
> another area. The Board shall regard such hospitals as rural and as entitled
> to the exceptions extended to referral centers and sole community hospitals,
> if such hospitals are so designated.*

H.R. Conf. Rep. No. 106-479, 512 (1999) (emphasis added).

> As this Court explained in its Ruling on Plaintiff's Motion for a Preliminary

Injunction when faced with the same argument by Plaintiff:

> While the Second Circuit has considered legislative history at step one of
> *Chevron*, *see Cohen*, 498 F.3d at 116, it also noted that "the Supreme
> Court has issued mixed messages as to whether a court may consider
> legislative history at . . . step one of *Chevron*," *Coke v. Long Island Care At
> Home, Ltd.*, 376 F.3d 118, 137 (2004) *vacated and remanded on other
> grounds by* 546 U.S. 1147 (2006); *see also id.* at 137 n.3 (collecting and
> comparing cases).  Here, adopting Plaintiff's analysis would require the

Court to rely on the conference report to expand on the . . . terms of Section 401 and create a conflict with the challenged regulation where none exists on the face of the statute.   Other courts have rejected such attempts by plaintiffs to create statutory [conflict] via legislative history when confronted with an otherwise permissible agency interpretation. *See, e.g.*, *San Bernardino Mountains Cmty. Hosp. v. Sec'y*, 63 F.3d 882, 887 (9th Cir. 1995) ("[B]ecause the Secretary's interpretations fall squarely within her statutorily granted discretion, legislative history such as the Senate committee report cannot defeat the regulation."); *Clinton Mem. Hosp. v. Shalala*, 10 F.3d 854, 858 (D.C. Cir. 1993) ("It is far from clear to us that anything in a Senate committee report . . . could condemn as impermissible an interpretation fitting squarely within statutory language."); *Macon Cnty. Samaritan Mem. Hosp. v. Shalala*, 7 F.3d 762, 767 (8th Cir. 1993) (suggesting that an attempt to create an ambiguity via legislative history "puts the cart before the horse.")

(Ruling [Doc. # 25] at 16.)

In rejecting Plaintiff's invitation to afford greater weight to the legislative history than to the text of the statute itself, this Court is merely heeding the Supreme Court's oft-repeated admonition that "the best evidence of [the] purpose [of a statute] is the statutory text adopted by both Houses of Congress and submitted to the President." *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991); *see also Cont'l Can Co. v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 916 F.2d 1154, 1157–58 (7th Cir. 1990) ("The text of the statute . . . is the law.   Only the text survived the complex process for proposing, amending, adopting, and obtaining the President's signature (or two-thirds of each house). . . . [T]he Constitution gives force only to what is enacted.").

Moreover, as the Court observed in its Ruling, and Defendants point out now, "even if the conference report is accepted as a persuasive indicator of congressional

intent, it is by no means clear that the regulation would be contrary to the statute." (Defs.' Mem. Supp. at 21.)  That is so for two reasons.

First, the impetus behind the statement at issue in the congressional report is unclear.  Defendants contend that Congress's intent was to ensure that a narrow category of hospitals that had once had, but since lost, RRC status (when their counties were reclassified as urban) were able to regain RRC status for purposes of reclassifying.  (*Id.* at 25–26.)  If that is the case, the Secretary's regulation does not present a conflict because in creating the regulation, the Secretary also permitted any hospital that was once an RRC to be reinstated as such.

Second, application of the regulation does not prevent hospitals like Plaintiff with acquired RRC status from applying for reclassification.  As Defendants explain, a hospital, like Plaintiff, "that utilized its acquired rural status under Section 401 to become an RRC" and then cancelled "that status for the next fiscal year," would still retain the benefits of RRC status for purposes of reclassification (because the cancellation of RRC status would not be effective until after the MGCRB issued its decision).  (*Id.* at 21.)  Indeed, Plaintiff *did* retain its RRC benefits for purposes of reclassification, as evidenced by its successful bid to be reclassified to the Nassau-Suffolk, NY urban area.  Because neither the language of the statute nor the legislative history yields a clear and unambiguous picture of Congressional intent, the issue cannot, contrary to Plaintiff's steadfast belief, be resolved at step one.

### B.    Chevron Step Two

Plaintiff argues that even if the regulation did not clearly conflict with the plain meaning of Section 401, the Secretary's interpretation of Section 401 is arbitrary and

capricious.  Plaintiff bases this argument on the Secretary's comments in adopting the regulations, in which she acknowledged the language of the conference report and noted that "Congress clearly intended hospitals that become rural under [Section 401] of the Act to receive some benefit as a result," but then adopted regulations that "fly in the face of the Secretary's own expressed understanding of Section 401 and its intent."  (Pl.'s Mem. Supp. at 35.)  Plaintiff concludes: "By interpreting Section 401 so that a Section 401 hospital is never treated by the MGCRB as being located in the rural area of the State, and ignoring Congress's clear direction that the 'Board shall regard such hospitals as rural,' the Secretary ceases to implement law and seeks to create her own.  In doing so she has acted arbitrarily, capriciously, and contrary to statutory requirements." (*Id.* at 36.)

However, the record before the Court leads it to a different conclusion.  Contrary to Plaintiff's allegations, the record shows that the Secretary's decision was deliberate, logical, and considered.  During the rulemaking, the Secretary expressed concern "that some hospitals might inappropriately seek to be treated as being located in a rural area for some purposes and as being located in an urban area for other purposes," 65 Fed. Reg. 47054, 47088, and that such a scenario could have unintended consequences permitting some hospitals to receive inappropriate reimbursements, *see id.* at 47089.  The Secretary explained:

> This policy is consistent not only with the statutory language but also with the policy considerations underlying the MGCRB process. The MGCRB process permits a hospital to be reclassified from one geographic area to another if it is significantly disadvantaged by its geographic location and would be paid more appropriately if it were reclassified to another area. We believe that it would be illogical to permit a hospital that applied to be reclassified from urban to rural under section 1886(d)(8)(E) of the Act because it was disadvantaged as an urban hospital to then utilize a process

that was established to enable hospitals significantly disadvantaged by their rural or small urban location to reclassify to another urban location. If an urban hospital applies under section 1886(d)(8)(E) of the Act in order to be treated as being located in a rural area, then it would be anomalous at best for the urban hospital to subsequently claim that it is significantly disadvantaged by the rural status for which it applied and should be reclassified to an urban area.

*Id.* at 47088.

Further, the Secretary considered alternative proposals to limit the potential for inappropriate payments and concluded that the proposed regulation, combined with the changes to the RRC policy described above, would best address its concerns regarding the interplay of Section 401 and the MGCRB reclassification process.  *Id.* at 47089; (Defs.' Mem. Supp. at 25–27.)  Such a deliberate and well-reasoned approach can hardly be considered arbitrary or capricious.  *See Bellevue Hosp. Ctr. v. Leavitt*, 443 F.3d 163, 174 (2d Cir. 2006) (a finding that agency action is arbitrary and capricious can be made only where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." (internal citations and quotation mark omitted)).

Moreover, as discussed in the step one analysis, there is nothing in either the text of the statute or the legislative history to suggest that the Secretary's regulations are based on an impermissible construction of the statute.  Certainly the statute and legislative history do not compel the Secretary's interpretation, but nor do they prohibit it.  The statute requires that the MGCRB to "treat" a subsection d hospital "as being located in the

16

rural area . . . of the State in which the hospital is located." 42 U.S.C. § 1395ww(D)(8)(E). The conference report adds a mandate (not included explicitly in the statute) that subsection d hospitals "be eligible to apply to the [MGCRB] for geographic reclassification to another area" and that "[t]he Board shall regard such hospitals as rural and as entitled to the exceptions extended to referral centers . . . if such hospitals are so designated. H.R. Conf. Rep. No. 106-479, 512 (1999). Consistent with both of these mandates, the Secretary's regulations, as demonstrated clearly in this case, permit subsection d hospitals to be reclassified and in doing so, to take advantage of their RRC status. The agency's regulations simply prohibit those hospitals from maintaining RRC status after they are reclassified (at their request) as urban. The Secretary here did little more than use the discretion, explicitly granted to her by Congress to "publish guidelines to be utilized by the Board in rendering decisions on applications." 42 U.S.C. § 1395ww(d)(10)(D)(i). Defendants' actions were neither arbitrary nor capricious.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion [Doc. # 36] for Summary Judgment is DENIED and Defendants' Motion [Doc. # 35] for Summary Judgment is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of December, 2014.